## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

In Re:

**JOSEPH DuMOUCHELLE FINE**  Case No. 19-56239
**& ESTATE JEWELLERS, L.L.C.**

           Hon. Phillip J. Shefferly

  Alleged Debtor

           Involuntary Chapter 7 Proceeding

_____/

## EMERGENCY MOTION BY
## PETITIONING CREDITORS TO APPOINT
## INTERIM TRUSTEE UNDER 11 U.S.C. §303(g)

  East Continental Gems, Inc. ("ECG"), Thomas Ritter ("Ritter"), and William Noble Rare Jewels, LP ("Rare Jewels") (together the "Petitioning Creditors"), by and through their undersigned counsel Schafer and Weiner, PLLC, hereby file this *Motion to Appoint Interim Trustee Pursuant to 11 U.S.C. §303(g)* (the "Motion") and state as follows:

## THIS IS A LEGAL EMERGENCY

## I.  BACKGROUND

  1.  Two days after a bench warrant for the arrest of Joseph DuMouchelle and Melinda Adducci was issued by the Oakland County Circuit Court, they filed a joint chapter 11 voluntary bankruptcy petition in this court on October 11, 2019 (the "DuMouchelle Chapter 11").

2.     On November 17, 2019, a chapter 7 involuntary petition was filed against Joseph DuMouchelle Fine & Estate Jewellers, L.L.C., the wholly-owned subsidiary of Joseph DuMouchelle and/or Melinda Adducci (the "DuMouchelle LLC Involuntary Case").

3.     Joseph DuMouchelle and Melinda Adducci appeared yesterday at their §341 hearing in the DuMouchelle Chapter 11, accompanied by bankruptcy counsel of record and criminal counsel, David Griem.  In response to questioning by the United States trustee ("UST") and several creditors in attendance, Mr. DuMouchelle and/or Ms. Adducci, upon the advice of their criminal counsel, invoked their fifth amendment privilege against self-incrimination, roughly 125 times in response to basic, substantive and material bankruptcy inquiries, including:

- Recognition of their signatures on their chapter 11 petition;

- Recognition of their signatures on their bankruptcy schedules;

- Recognition of their signatures on their statement of financial affairs;

- Ownership of real estate other than as disclosed;

- Reason(s) for filing chapter 11;

- Membership interests in LLCs;

- LLC operations;

- Contents of documents previously furnished to the UST at the chapter 11 initial debtor interview;

- Number of storage units;

- Access to storage units;

- Description of pending litigation;

- Omission of description of pending litigation from their bankruptcy schedules;

- Location of their books and records;

- Earned income;

- Currently monthly income;

- Ownership of computers/servers;

- Value of trusts;

- Beneficiary interests in trusts;

- The disappearance of a 3.88 carat Fancy Intense Green Natural Cushion Modified Brilliant Diamond;

- The disappearance of millions of dollars of entrusted funds to be used for the purchase of gemstones; and

- The disappearance of other valuable, consigned gemstones.

4. The §341 hearing could not be concluded because, among other reasons, Joseph DuMouchelle and/or Melinda Adducci, on the advice of their criminal counsel, refused to authenticate their joint chapter 11 voluntary bankruptcy petition, bankruptcy schedules and statement of financial affairs.

## II. <u>INTRODUCTION</u>

5.     The bankruptcy court is a court of disclosure by those who seek its protection from creditors.  The benefits of the automatic stay under §362 are not free from the burdens of mandatory disclosure by those who file, under oath and under penalty of perjury.

6.     Joseph DuMouchelle and Melinda Adducci, owner(s) of the Alleged Debtor here, should be considered as debtors-in-possession and accordingly  should generally be obligated to perform the duties of a trustee 11 U.S.C. §1107.

7.     A trustee must perform several duties of the trustee under 11 U.S.C. §704(a), including being accountable for all property received, furnishing information concerning the estate and the estate's administration as requested by a party in interest, filing periodic reports and summaries of business operations and such other information as the UST or the court requires, and making a final report and filing a final account of the administration of the estate with the court and with the UST.  11 U.S.C. §704(a)(2)(7)(8) and (9).

8.     By invoking their fifth amendment right against self-incrimination upon the advice of counsel roughly 125 times at their §341 hearing yesterday - - including the refusal to even authenticate their signatures of their joint chapter 11 voluntary bankruptcy petition, bankruptcy schedules and statement of financial affairs - - Joseph DuMouchelle and Melinda Adducci cannot - - and refuse to - -

perform the duties of a trustee. Given that this Alleged Debtor is generally not paying its debts as they mature - - after all, the schedules in the DuMouchelle Chapter 11 list debts exceeding $23,000,000 - - the entry of an order for relief appears inevitable especially since both Joseph DuMouchelle and Melinda Adducci are expected to continue to invoke their fifth amendment privilege and refuse to oppose the voluntary petition or testify at the trial on the involuntary petition.

9.     While the creditors are stonewalled, the Alleged Debtor is free to wreak havoc in this case - - protected by the automatic stay - - hiding behind their principals' refusal to disclose assets, explain pre-petition losses or disclose whether the Alleged Debtor is operating at its current or former locations in Naples, Florida, Palm Beach, FL, New York, New York or Birmingham, Michigan.

10.     This case cries out for the immediate appointment of a third-party fiduciary - - an interim chapter 11 trustee during the involuntary "gap" period - - to protect the estate and its creditors holding claims exceeding $23,000,000.

## III.  JURISDICTION AND VENUE

11.     The Petitioning Creditors filed an involuntary petition for chapter 7 relief against the Debtor, Joseph DuMouchelle Fine & Estate Jewellers, LLC ("Debtor") on November 17, 2019.

12.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334.

13.     This is a core proceeding under 28 U.S.C. §157(2)(A).

14.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

15.     An order for relief has not yet been entered.

16.     A trustee has not yet been appointed.

## IV.  FRAUDULENT ACTIVITIES

17.     Alleged Debtor ("Debtor") participates in the jewelry and gemstone business, selling jewelry and gemstones to the public out of its business location(s), at auction, and privately to individual purchasers or investors.

18.     Debtor has defrauded, among others, all of the Petitioning Creditors by promising to sell pieces of jewelry or stones on consignment and then refusing to remit proceeds or return the merchandise; requesting funds to buy and then sell pieces of jewelry or stones and then refusing to either remit the proceeds or return the funds, and other forms of misappropriation of entrusted goods or funds.

19.     The Petitioning Creditors - - owed roughly $20,000,000 do not know the location of their merchandise or funds, and the owner(s) of the Debtor - - Joseph DuMouchelle and Melinda Adduci - - won't tell them.

### *The Criminal Complaint Filed Against Joseph DuMouchelle*

20.     On November 8, 2019 the United States of America filed a criminal complaint against Joseph DuMouchelle, owner of Joseph DuMouchelle Fine & Estate Jewellers, L.L.C., for wire fraud in violation of 18 U.S.C. §1343, based on probable cause that Mr. DuMouchelle devised or intended to devise a scheme or artifice to defraud and obtained money and property by means of false and fraudulent pretenses, representations, or promises transmitted by means of wire communication.[1]

21.     Petitioning Creditors do not have specific information relating to other individuals or entities Debtor may have defrauded, but believe that similar fraudulent schemes or artifices have been perpetrated.[2]

---

[1] See case/caption, etc. attached as Exhibit "B".

[2] See also: (1) Jonathan Birnbach and J.B. International, LLC v. Joseph DuMouchelle, Index No. 651563/2019, Supreme Court, New York County-Judgment dated August 7, 2019 in the sum of $3,403,214.54; and (2) A-Ron Resources, LLC v. Joseph DuMouchelle International Auctioneers, LLC aka Joseph DuMouchelle Fine & Estate Jewelers, LLC, Joseph DuMouchelle, Index No 19SMCV01355, California Superior Court, County of Los Angeles, complaint alleges breach of contract, breach of fiduciary duty and damages exceeding $2.4 million.

# V. RELIEF REQUESTED

22.     The Petitioning Creditors respectfully request that this Honorable Court enter an order, substantially in the form attached as **Exhibit A**, appointing an interim trustee for Debtor pending entry of an order for relief.

# BASIS FOR RELIEF

23.     11 U.S.C. §303(g) states that, in part:

> At any time after the commencement of an involuntary case under chapter 7 of this title but before an order for relief in the case, the court, on request of a party in interest, after notice to the debtor and a hearing, ***and if necessary to preserve the property of the estate or to prevent loss to the estate,*** may order the United States trustee to appoint an interim trustee under section 701 of this title to take possession of the property of the estate and to operate any business of the debtor.

11 U.S.C. §303(g). (emphasis added).

24.     There is a dearth of case law on the appointment of interim trustees under §303(g).

25.     At least one court has looked to the legislative history underlying §303, noting that an interim trustee should be appointed if the debtor "may attempt to abscond with assets, dispose of them at less than their fair market value, or dismantle his business, all to the detriment of his creditors." *In re DiLorenzo*, 161 B.R. 752, 754 (Bankr. S.D.N.Y. 1993).

26.     Other courts have appointed interim trustees when doing so would preserve and protect the property of the estate, *Alpine Lumber & Nursery*, 13 B.R. 977, 979 (Bankr. S.D. Cal. 1981); *In re Reed*, 11 B.R. 755, 757 (Bankr. S.D. W. Va. 1981); prevent concealment, waste, or loss of assets by the debtor, *In re Betteroads Asphalt, LLC*, 594 B.R. 516, 542 (Bankr. D.P.R. 2018); *In re Amanat*, 340 B.R. 713, 714 n. 1 (Bankr. S.D.N.Y. 2006); *In re Alpine Lumber & Nursery*, 13 B.R. at 979; *In re Rush*, 10 B.R. 518, 523 (Bankr. N.D. Ala. 1980); or prevent irreparable harm that could occur between the filing of the involuntary petition and the entry of an order for relief. *In re Reed,* 11 B.R. at 757; *see also* 9 Collier on Bankruptcy, ¶ 2001.02[2] ("In support of the appointment, courts have cited evidence that assets are missing or are in danger of being dissipated by the debtor.").

27.     It is not uncommon for creditors to file involuntary petitions against companies involved in the jewelry and gemstone business or for courts to appoint interim trustees over these companies. *See*, *e.g. Messer v. Peykar Int'l Co.* (*In re Fine Diamonds, LLC*), 501 B.R. 159, 174-75 (Bankr. S.D.N.Y. 2013); *In re Gems N' Things, Inc.*, 60 B.R. 288, 288-89 (Bankr. S.D.N.Y. 1986); *In re Tampa Chain Co.*, 35 B.R. 568, 571 (Bankr. S.D.N.Y. 1983); *Order Appointing Interim Trustee*, *In re A.N. Frieda Diamonds, Inc.*, No. 15-11862 (MEW) (Bankr. S.D.N.Y. August 5, 2015) (DN 20).

28.     While these opinions do not specify why the courts appointed interim trustees, the Petitioning Creditors believe it is because of the easy and practically invisible portability of millions of dollars of goods, in shallow pants pockets or waist belts.

29.     To date, Debtor has absconded with millions and millions of dollars of jewelry gemstones, and funds from the Petitioning Creditors and has refused to explain their whereabouts.

30.     These assets can be easily transported and disposed of.  For instance, the green diamond ring ECG consigned to Debtor is worth $810,000 despite weighing only 3.88 carats.

31.     The Petitioning Creditors have been unable to account for or locate these misappropriated funds, jewelry, and gemstones.   Given Debtor's prior fraudulent schemes, and the ease with which jewelry and gemstones may be hidden or transported, the Petitioning Creditors believe Debtor may - - and will - - conceal, waste, lose, abscond with, or otherwise dispose of the jewelry and gemstones consigned to Debtor, and the money Debtor has misappropriated, requiring the immediate appointment of an interim trustee.  *See In re Betteroads Asphalt, LLC*, 594 B.R. at 542; *In re Amanat*, 340 B.R. at 714 n. 1; *In re Alpine Lumber & Nursery*, 13 B.R. at 979; *In re Rush*, 10 B.R. at 523; 9 Collier on Bankruptcy, ¶ 2001.02[2]

32.     Looting these items will deplete the estate of its main assets, thereby causing irreparable harm not just to the Petitioning Creditors, but to all of Debtors' creditors, requiring the appointment of an interim trustee.  *Alpine Lumber & Nursery*, 13 B.R. at 979; *In re Reed*, 11 B.R. at 757; 9 Collier on Bankruptcy, ¶ 2001.02[2].

**WHEREFORE**, the Petitioning Creditors respectfully request that this Honorable Court enter an Order substantially in the form of **Exhibit A** immediately appointing an interim trustee for Debtor pending entry of an order for relief and granting such other relief as is appropriate.

Respectfully submitted:

SCHAFER AND WEINER, PLLC

By:   /s/ Daniel J. Weiner
      DANIEL J. WEINER (P32010)
      HOWARD M. BORIN (P51959)
      NICHOLAS R. MARCUS (P81184)
      *Counsel for Petitioning Creditors*
      40950 Woodward Ave., Ste. 100
      Bloomfield Hills, MI 48304
      248-540-3340
      dweiner@schaferandweiner.com
      hborin@schaferandweiner.com
      nmarcus@schaferandweiner.com

Dated:  November 20, 2019

# EXHIBIT A

{00563687.1}

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

In Re:

**JOSEPH DuMOUCHELLE FINE**
**& ESTATE JEWELLERS, L.L.C.**

      Alleged Debtor

_____/

Case No. 19-56239

Hon. Phillip J. Shefferly

Involuntary Chapter 7 Proceeding

## ORDER APPOINTING INTERIM TRUSTEE

Upon the Motion of the Petitioning Creditors East Continental Gems, Inc., Thomas Ritter, and William Noble Rare Jewels, LP, creditors of the Alleged Debtor Joseph DuMouchelle Fine & Estate Jewellers, L.L.C., for an Order to Appoint an Interim Trustee Pursuant to 11 U.S.C. §303(g) (the "Motion"); and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and after due deliberation and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED:**

1.    The Motion is **GRANTED**.

2.     The Office of the United States Trustee shall appoint an interim trustee (the "Interim Trustee") immediately, pursuant to 11 U.S.C. §303(g) pending the entry of an order for relief.

3.     The Interim Trustee shall take possession of all of the property of the Alleged Debtor's estate herein of whatever kind, nature or description, and the Alleged Debtor and any other person or persons are hereby ordered immediately to turn over to the Interim Trustee all such property of the estate in the possession, custody or control of the Alleged Debtor and/or any other person or persons.

4.     The Alleged Debtor shall recover and deliver to the Interim Trustee all consigned goods in its possession, custody or control.

5.     The Alleged Debtor, its creditors, and all other persons are enjoined, restrained, and stayed from interfering with the actions of the Interim Trustee, including all actions to preserve property of the estate or to prevent a loss to the estate.

6.     This order is entered as a final order with immediate effect.

# EXHIBIT B

{00563687.1}

AUSA:   Karen Reynolds          Telephone: (313) 226-9672
AO 91 (Rev. 11/11)  Criminal Complaint          Special Agent:   Christine A. Taylor          Telephone: (248) 219-6706

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

B

United States of America

v.

JOSEPH GREGORY DUMOUCHELLE

| Case: 2:19-mj-30586 |
| Judge: Unassigned, |
| Filed: 11-08-2019 |
| SEALED MATTER (MAW) |

### CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ February 2019 _____ in the county of _____ Wayne _____ in the _____ Eastern _____ District of _____ Michigan _____, the defendant(s) violated:

|            Code Section            |   Offense Description   |
|------------------------------------|-------------------------|
| 18 U.S.C. § 1343                   | Wire Fraud              |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
Complainant's signature

Christine A. Taylor, Special Agent, FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: November 8, 2019

City and state:  Detroit, MI

_____
Judge's signature

Elizabeth A. Stafford
Printed name and title

## AFFIDAVIT

1.      I, Christine Ann Taylor, being duly sworn make the following statements in support of this warrant:

### INTRODUCTION:

2.      I am Special Agent with the Federal Bureau of Investigation (FBI) and have been so since June 1997. I am currently assigned to the Detroit Division, Oakland County Resident Agency, which is located in Troy, Michigan.  My duties include investigating White Collar Crimes to include violations of 18 USC 1343 and 1344.

3.      I am a "federal law enforcement officer" within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure.

4.      This Affidavit is in support of an application for a warrant to arrest Joseph Gregory DuMouchelle.

5.      The statements in this Affidavit are based in part on information provided by other law enforcement officers, my investigation of this matter and my experience and training as a Special Agent of the FBI.  I have not included every fact known to me regarding this investigation.  I have set forth the facts that I believe are necessary to establish probable cause that Joseph Gregory DuMouchelle perpetrated Wire Fraud in violation of 18 U.S.C. 1343.

1

## DETAILS OF THE INVESTIGATION

6.    DuMouchelle is the owner of Joseph DuMouchelle Fine & Estate Jewelry Buyers, Sellers, Appraisers and Auctioneers, LLC with offices in Florida, New York and Birmingham, Michigan (located in the Eastern District of Michigan).

7.    In May 2019, Thomas Theodore Ritter, a resident of North Dakota, contacted the FBI to advise of the following:

8.    DuMouchelle has been in the gem business for a number of years. DuMouchelle's wife, Melinda Adducci, is related to Ritter's brother-in-law. Ritter and DuMouchelle met approximately five or six years ago at a family wedding. After that, Ritter would see DuMouchelle annually. Ritter and DuMouchelle began doing business together shortly after they met. Ritter gave DuMouchelle money to purchase jewelry and they would split the profits once the jewelry was sold. Prior to January 2019, DuMouchelle owed Ritter approximately $430,000 from prior jewelry transactions.

9.    In January 2019, Ritter contacted DuMouchelle in order to collect the $430,000 DuMouchelle owed him. DuMouchelle presented an opportunity to purchase a Yellow Rose Diamond from a family trust in Texas. DuMouchelle represented to Ritter that the owner of the Yellow Rose Diamond was recently

2

deceased. DuMouchelle told Ritter that William Noble represented the deceased family regarding the sale of the diamond.

10.     DuMouchelle told Ritter the Yellow Rose Diamond could be purchased for $12,000,000 and sold for $16,000,000. In approximately February 2019, Ritter decided to participate in the transaction involving the Yellow Rose Diamond. The agreement was that Ritter would receive 75% of the profit from the sale and DuMouchelle would receive 25%. Ritter made it clear to DuMouchelle that he wanted to wire transfer the funds directly to the seller of the diamond and not to DuMouchelle.

11.     DuMouchelle told Ritter that Adducci, would contact Ritter to discuss the opportunity further.

12.     Ritter advised a short time later, Adducci contacted Ritter. She conducted an appraisal of the diamond and emailed it to Ritter.

13.     The description of the Yellow Rose Diamond was as follows: " A natural fancy vivid yellow emerald cut diamond ring in platinum and 18 karat yellow gold. The center diamond weighs 77.12 carats, VS2 clarity. The diamond measures 24.52 x 23.60 x 15.87 millimeters and has been certified by the Gemological Institute of America with Report Number 5131020246. The mounting contains 5.27 carats of round brilliant cut yellow and white tapered and diamond

3

baguettes. The diamond is accompanied by a GIA Monograph book and given the name "The Yellow Rose". "

14.     On February 4, 2019 at 12:58 pm, DuMouchelle sent Ritter an email from his email account joe@josephdumouchelle.com which contained wire instructions. I reviewed the Internet Protocol (IP) information specific to where the email from DuMouchelle to Ritter originated. I utilized public search engines to attempt to identify the geolocation of the originating email. My investigation revealed the email was sent from a location within the Eastern District of Michigan, specifically, the metropolitan Detroit area. Within the email from DuMouchelle was what appeared to be an email forwarded from Richard Drucker of Gemworld International, Inc. email address rdrucker@gemguide.com. The email provided wire instructions to FineMark Bank and Trust, account number ending in 6231 in the name of Fine & Estate Appraisers, LLC. Investigation has revealed this account belonged to DuMouchelle and his wife Melinda Adducci. Based upon these representations and instructions, Ritter initiated the wire transfer which was subsequently declined by FineMark Bank. DuMouchelle told Ritter the wire transfer was denied by FineMark Bank because the dollar amount was too high.

15.     On February 6, 2019, DuMouchelle sent Ritter an email from his email account joe@josephdumouchelle.com. Within the email from DuMouchelle

4

was what appeared to be an email purportedly from Drucker dated February 4, 2019 at 12:58 pm (same date and time as above), with new wire instructions for Bank of America account number ending in 0585. Investigation has revealed this account belonged to DuMouchelle Fine & Estate Jewelers LLC. I reviewed the Internet Protocol (IP) information specific to where the email from DuMouchelle to Ritter originated. I utilized public search engines to attempt to identify the geolocation of the originating email. My investigation revealed the email was sent from a location within the Eastern District of Michigan, specifically, the Metropolitan Detroit area.

16. On February 9, 2019 at 8:51 pm, DuMouchelle sent Ritter and email from his email account joe@josephdumouchelle.com. I reviewed the Internet Protocol (IP) information specific to where the email from DuMouchelle to Ritter originated. I utilized public search engines to attempt to identify the geolocation of the originating email. My investigation revealed the email was sent from a location within the Eastern District of Michigan, specifically, the metropolitan Detroit area. The email stated the following: "Attached please find the receipt for the purchase of the 77.12ct Yellow Rose Diamond. This receipt is for the diamond and the ring mounting the diamond is set in. It also includes the book produced by the GIA for the Yellow Rose". I reviewed the receipt attached to the email and it reflected the above described "Yellow Rose Diamond" was sold on

5

February 6, 2019 for $12,000,000 which was paid in full on February 6, 2019 via wire transfer.

17.     On October 1, 2019, I interviewed Drucker. He advised his company is an independent consulting firm.  His company is not in the business of purchasing or selling jewelry. Drucker has known DuMouchelle both personally and professionally for 25 to 30 years. He recalled an occasion when DuMouchelle contacted him and asked him to put together a report on a Yellow Rose Diamond.  This was not something that Drucker would typically do, but because of their long standing relationship, Drucker agreed to prepare the report as a favor to DuMouchelle.  Drucker did not have any involvement in a transaction involving the diamond nor did he know who the purchaser and seller were. Sometime after he prepared the report for DuMouchelle, Drucker was contacted by Ritter who inquired about Drucker's involvement in the sale of the Yellow Rose Diamond.  Specifically, Ritter told Drucker that Drucker was represented to Ritter in email communications from DuMouchelle as a representative of the seller.

18.     William Noble of Dallas, Texas, was interviewed pursuant to this investigation.  He said he was introduced to Joseph DuMouchelle by an associate in 2018.

19.     Noble advised in 2018, DuMouchelle took a 13.04 carat Emerald Cut Diamond Ring – F color, VS2 clarity, GIA – from Noble for $950,000.00

6

consignment. The agreement was explicit that if DuMouchelle sold the piece, he would pay Noble the $950,000.00 and split any profits made with no terms. After some time, Noble asked for the piece to be returned, and got no response from DuMouchelle. Noble asked again for the piece to be returned, and DuMouchelle told him that the piece sold with a 5% ($50,000.00) profit, and that DuMouchelle gave his client 30/60/90 terms to pay. DuMouchelle sent Noble a check for $100,000.00. The second check sent from DuMouchelle, for $450,000.00 was returned for non-sufficient funds.

20.   On July 31, 2018, while Noble was vacationing in Colorado, Noble was informed DuMouchelle appeared at his store unannounced and wanted to take goods to a 3-day show in New York for private individuals. Noble allowed DuMouchelle to pick out some goods to take to the show. At that time, Noble did not know DuMouchelle took 29 items. DuMouchelle subsequently listed the items through his online auction at a fraction of the cost of what Noble consigned them for.   When Noble confronted DuMouchelle, he said it was all a mistake and he would correct it. Noble demanded return of the items.   Over the next two months, DuMouchelle returned 27 out of 29 items to Noble. Since DuMouchelle returned the majority of his items, Noble felt comfortable continuing to do business with DuMouchelle. Noble sent more items for DuMouchelle to sell.   When Noble requested the return of items, DuMouchelle would either refuse or send Noble

7

phony tracking numbers and shipping numbers to mislead Noble into thinking the items were in transit. By the end of 2018, DuMouchelle had approximately $12.5 million of Noble's items.

21.    In February 2019, Noble was contacted by Anthony Dimmagio, a jeweler in Detroit, Michigan. Dimmagio told Noble he was contacted by DuMouchelle who stated that he was having an estate sale and the merchandise was selling for $.20 on the dollar. All of the merchandise belonged to Noble. Noble confronted DuMouchelle about this new information, and DuMouchelle denied all the claims. DuMouchelle then advised Noble he had a purchaser lined up to purchase the Yellow Rose Diamond. DuMouchelle further advised the purchaser would not allow him to take a profit so he offered a price of $12,000,000 to the purchaser. He asked if Noble would take $10,000,000 for the sale and wire transfer $2,000,000 back to DuMouchelle. Noble felt this was improper and possibly illegal so, he declined the sale.

22.    In or around February 2019, Noble received 6 pieces of his merchandise back from DuMouchelle, and shortly after, he received a wire of $4.2 million which Dumouchelle represented was for three pieces that DuMouchelle sold on Noble's behalf. Investigation revealed there was a transfer from DuMouchelle's Bank of America account number ending in 0585 on February 7, 2019 to Noble's account ending in 9238 for $4.250 million.

8

23. Further investigation has revealed that the above referenced wire transfer in the amount of $4.250 million on February 7, 2019 was proceeds of the $12,000,000 wire transfer from Ritter to DuMouchelle on February 6, 2019 for the purported purchase of the Yellow Rose Diamond.

24. Since February, Noble made numerous attempts to contact DuMouchelle via phone, messaging, and email to either have his items returned or to be paid for the items. Noble sent an employee to Detroit, Michigan for two weeks to try to contact DuMouchelle and bring the goods back, but he was unsuccessful. Later in the spring 2019, another employee traveled to Miami, Florida with the Yellow Rose Diamond previously mentioned to meet DuMouchelle and his client. The employee waited for several days, but DuMouchelle did not show because his "client had a broken knee". The employee returned to Texas with the Yellow Rose Diamond.

25. On April 12, 2019, DuMouchelle sent Ritter an email from his email account joe@josephdumouchelle.com. The email contained a copy of the contract for the purchase and sale of the above referenced Yellow Rose Diamond. The contract revealed that the diamond was sold to Jennifer H. Rands Trust, 35980 Woodward Avenue, Bloomfield Hills, Michigan for $16,500,000. DuMouchelle told Ritter that the purchaser sent three wires transfers to DuMouchelle in the amounts of $2,000,000, $4,000,000 and $10,500,000. Upon review of the Bank of

9

América account ending in 0585, I did not observe any deposits for the above listed amounts nor did I observe any wire transfers associated with the purchaser. On April 19, 2019, DuMouchelle sent Ritter, via email account joe@josephdumouchelle.com, an accepted copy of the contract. Both parties signed the written contract. During his interview, Noble advised he never sent the Yellow Rose Diamond to DuMouchelle nor did he agree to sell it to DuMouchelle.

26. On or about April 21, 2019, Ritter traveled to Detroit to see the Yellow Rose Diamond for himself. DuMouchelle told Ritter the diamond was being held at the Brink's facility in Detroit, Michigan. DuMouchelle picked Ritter up from the airport and claimed the person in charge of the Brink's facility was on vacation so, they could not see the diamond. Instead, they visited DuMouchelle's office located at 251 East Merrill Street, Suite 236, Birmingham, Michigan. While at DuMouchelle's place of business in Birmingham, Michigan, DuMouchelle showed Ritter the book that accompanies the Yellow Rose Diamond. Ritter did not see the Yellow Rose Diamond.

27. When Noble was interviewed, he advised he had approximately twelve books created for the Yellow Rose Diamond. The intent of creating the books was to provide the books to prospective purchasers of the Yellow Rose Diamond. DuMouchelle was provided a book which he never returned.

28.     Jonathon Birnbach of New York was interviewed pursuant to this

investigation.  Birnbach advised he conducts business as JB International LLC and

Jonathon Birnbach.  He has been buying and selling jewelry with

DUMOUCHELLE for approximately twelve years.  In September or October

2018, DUMOUCHELLE told Birnbach he was bidding on jewelry from estates.

He suggested that he and Birnbach could purchase the jewelry and sell it for a

profit at auction, after which they would split the profits evenly.  In November

2018, Birnbach entered into a consignment agreement with DUMOUCHELLE.

DUMOUCHELLE told Birnbach 95% of the consigned items sold at auction yet,

Birnbach never received the proceeds of the sale.  DUMOUCHELLE promised to

pay Birnbach in January 2019.  Birnbach said he sent approximately twelve wire

transfers to DUMOUCHELLE for purchase of items at auction.  Each wire

transferred was associated with a consignment agreement.  To date, Birnbach has

only received $500,000 from DUMOUCHELLE and he is owed approximately

$2.5 to $3 million.

29.　Based on the above information, I believe probable cause exists that Joseph Gregory DuMouchelle devised or intended to devise a scheme or artifice to defraud and obtained money and property by means of false and fraudulent pretenses, representations, or promises transmitted or caused to be transmitted by means of wire communication in violation of 18 U.S.C. 1343.

Further Affiant Sayeth Not.


Christine A. Taylor, Special Agent
Federal Bureau of Investigation


Subscribed and sworn before me on this _8th_ day of November, 2019.


Elizabeth A. Stafford
United States Magistrate Judge

12