# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DISTRICT

In Re:

JOSEPH DuMOUCHELLE FINE
& ESTATE JEWELLERS, L.L.C.

        Debtor,

_____/

Case No. 19-56239
Chapter 7
Hon. Lisa S. Gretchko

## TRUSTEE'S MOTION FOR AN ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 9019 AND 2002 APPROVING SETTLEMENT WITH ZEIDMAN'S JEWELRY AND LOAN OF MICHIGAN, LLC, ZEIDMAN'S JEWELRY & LOAN OF SOUTHFIELD, INC., AND ZEIDMAN'S LOAN OFFICE, INC., AND, IN ADDITION, APPROVING A SETTLEMENT WITH WILLIAM NOBLE RARE JEWELS, LP, WILLIAM NOBLE AND ITS AFFILIATES REGARDING THE DISTRIBUTION OF PROCEEDS UNDER THE AGREEMENT FOR ASSIGNMENT OF RIGHTS AND PROCEEDS SHARING DATED SEPTEMBER 2, 2020

Mark H. Shapiro (the "Trustee"), in his capacity as Trustee for the bankruptcy estate of Joseph DuMouchelle Fine & Estate Jewellers, L.L.C. (the "Debtor"), through his counsel, Schafer and Weiner, PLLC, for his *Motion for an Order Pursuant to Section 105 and 363 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 9019 and 2002 Approving Settlement with Zeidman's Jewelry and Loan of Michigan, LLC, Zeidman's Jewelry & Loan of Southfield, Inc., and Zeidman's Loan Office, Inc.* (the "Motion"), states as follows:

{00999554.1}

## JURISDICTION

1.　　The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

2.　　This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.　　Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.　　The statutory bases for the relief requested herein are 11 U.S.C. §§ 105 and 363 and Federal Rules of Bankruptcy Procedure 9019 and 2002.

## BACKGROUND

5.　　On November 17, 2019 (the "Petition Date"), creditors of the Debtor filed an Involuntary Petition for Relief against the Debtor under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). [1]

6.　　The Trustee is the duly appointed Chapter 7 Trustee over the Debtor's bankruptcy estate (the "Bankruptcy Estate").

7.　　Prior to the Petition Date, the Debtor purchased and sold jewelry, and facilitated and conducted sales of jewelry owned by third parties.

8.　　The Trustee entered into an *Agreement for Assignment of Rights and Proceeds Sharing* dated September 2, 2020 (the "Assignment Agreement") with

---

[1]Except as otherwise noted herein to the contrary, all section references are references to sections of the Bankruptcy Code.

William Noble Rare Jewels, LP, William Noble and its affiliates (collectively, "Noble") following entry of the *Order Granting Stipulation for Entry of Order Authorizing Compromise With Noble.* [ECF No. 198].

9. Under the Assignment Agreement, Noble assigned to the Trustee the following claims and causes of action (collectively, "Noble Claims"): "all of [Noble's] right, title, and interest in and to any and all rights, claims, and causes of action they have, or may have, against Zeidman's and any other party who had contact with Zeidman's relating to the jewelry identified on the UCC Financing Statement filed by Noble against Debtor in the state of Michigan on 12-27-2019 as amended on 1-9-2019, and UCC Financing Statements filed by Noble against the Debtor in Florida. New York. Texas and North Dakota . . . and any proceeds related thereto[.]" Accordingly, pursuant to the Assignment Agreement, the Trustee is the assignee of the Noble Claims and the sole party vested with the right to assert claims and causes of action related to the Noble Jewelry (defined below).

10. On December 28, 2020, the Trustee filed a Complaint in the Bankruptcy Court, initiating Adversary Proceeding 21-04023 (the "Adversary Proceeding") against Zeidman's Jewelry and Loan of Michigan, Inc., Zeidman's Jewelry & Loan of Southfield, Inc., and Zeidman's Loan Office, Inc. (collectively, "Zeidman's"). The Trustee has asserted claims and causes of action against Zeidman's in the Adversary Proceeding, which claims and causes of action include

Noble Claims and other claims and causes of action belonging to the Trustee. The Noble Claims, together with all of the claims and causes of action asserted in the Adversary Proceeding, shall be referred to collectively as the "Claims." The Claims all relate to the following jewelry that Noble consigned to the Debtor under a bailment arrangement in which Noble retained title and the ability to pass title (collectively, the "Noble Jewelry"): (i)   a 12.02 carat oval diamond ring which was the subject of GIA Report and assigned GIA #5171235309 dated November 29, 2022 (the "Oval Diamond Ring"); (ii) a 70.00 ctw Harry Winston Graduated Diamond Riviera Necklace ("Graduated Diamond Necklace"); (iii) a 7.00 ct Radiant Diamond ("Radiant Diamond Ring"); (iv) 7.46 ct/8.10 ct Cushion Cut Diamond Studs ("Diamond Studs"); and (v) a 88.93 ctw Diamond Pear Necklace ("Diamond Pear Necklace").

11.    Pursuant to an Order of the Bankruptcy Court entered in the Adversary Proceeding on February 28, 2022 [ECF No. 119], the following items of Noble Jewelry are currently held in a safety deposit box under the joint control of the Trustee and Zeidman's (the "Lockbox") pending the outcome of this Adversary Proceeding: (i) the Oval Diamond Ring; and (ii) ten diamonds that were once a part of the Diamond Pear Necklace, also subject to GIA Reports and assigned GIA numbers  6204536370,  6204536407,  5202536361,  5202430398,  5201536363, 2201536731,   6207524695,   6204616668,   2205616674,   and   1206524645

(collectively, the "Loose Stones" and together with the Oval Diamond Ring, the "Subject Jewelry").

12. In the Adversary Proceeding, the Claims all relate to the Noble Jewelry and include fraudulent transfer, conversion, aiding and abetting conversion, and claim and delivery. *See* Amended Complaint, DN 38.

13. The Debtor pawned and/or sold the Noble Jewelry to Zeidman's (the "Jewelry") prior to the petition date. The Debtor did not own the Noble Jewelry, Noble retained title. Zeidman's subsequently took possession and control of the Noble Jewelry.

14. These transactions form the factual basis for the Trustee's causes of action against Zeidman's. To support his causes of action, the Trustee has argued in the Adversary Proceeding that Zeidman's either knew or should have known that the Debtor did not own the Jewelry, and that the Debtor did not receive reasonably equivalent value for the Jewelry. Zeidman's has argued the opposite and maintained that the Trustee's causes of action are completely unfounded and that Zeidman's properly took legal ownership of the Noble Jewelry.[2]

15. Zeidman's has denied liability for all of the Claims and asserted defenses to them.

---

[2] These are, as this Court knows, very rudimentary summaries of the legally complex, nuanced, and factually complicated arguments the parties have advanced and sought to prove in the Adversary Proceeding.

16. The Parties now wish to resolve the Claims and the Adversary Proceeding in accordance with the terms of the Settlement Agreement ("Settlement") attached as **Exhibit B** to this Motion.

17. The Trustee and Zeidman's (together, the "Parties") have exchanged a substantial amount of written discovery, and contested several motions related to complex legal and factual issues, including a motion to dismiss for failure to state a claim, motions related to the obligations of the Parties to obtain documents from various third parties, and motions related to spoliation issues. The Parties have retained valuation experts to value the Noble Jewelry – a task that the Trustee believes is complicated by the fact that most of the Noble Jewelry is no longer in Zeidman's possession or under its control.

18. The Parties attended a mediation on July 20, 2023. The Parties mediated for the entire day but did not settle at mediation.

19. After mediation, the Parties continued to discuss settlement. The Parties exchanged settlement proposals, along with substantial written explanations justifying their settlement positions, both with and without the mediator, for the next six months.

20. The Parties have now agreed to a prospective settlement of the Adversary Proceeding, conditioned on this Court's approval. The Trustee believes the settlement is in the best interests of the Bankruptcy Estate, given the

anticipated high cost of continuing the Adversary Proceeding, and the inherent litigation risks to the Trustee.

21. After the Parties reached a prospective settlement, the Parties informed Noble of the terms thereof. The Parties also requested that Noble become a party to the prospective settlement and sign the proposed Settlement for certain limited purposes. In particular, Zeidman's had requested a release from Noble as part of the Settlement.

22. Noble was initially dissatisfied with the terms of the Settlement, and indicated that it would not sign the proposed settlement agreement and, further, that it would object to the Settlement.

23. Noble and the Trustee subsequently negotiated a separate agreement (the "Noble Agreement"). Pursuant to the Noble Agreement, instead of the payout to which Noble is entitled under the Assignment Agreement, Noble will receive from the Trustee the Oval Diamond Ring and a one-time payment of $5,000. The Trustee will be entitled to all other proceeds from the Settlement. Noble will sign the Settlement.

24. The Trustee believes that the Noble Agreement is also in the best interests of the Estate, given the anticipated costs associated with marketing and selling the Oval Diamond Ring and the cost of litigating an objection to the settlement.

## RELIEF REQUESTED

25.     The Settlement resolves all the disputes between the Trustee and Zeidman's and provides for (1) the transfer of the Subject Jewelry from the Lockbox to the Bankruptcy Estate, and (2) Zeidman's to make a cash payment of $330,000 to the Bankruptcy Estate.  Through this Motion, the Trustee seeks the entry of an order, pursuant to sections 105 and 363 and Fed. R. Bankr. P. 2002 and 9019 approving and authorizing the Trustee to enter into the Settlement.

## BASIS FOR RELIEF

26.     Fed. R. Bankr. P. 9019(a) provides that, "[o]n motion by the [debtors-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

27.     Settlements are generally favored in bankruptcy.  In re Dow Corning Corp., 198 B.R. 214, 221 (Bankr. E.D. Mich. 1996).  In granting a motion pursuant to Fed. R. Bankr. P. 9019(a), a court must find that the proposed settlement is fair and equitable and is in the best interests of the estate.  Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968); In re Dow Corning Corp., 198 B.R. at 222; In re Ionosphere Clubs, Inc., 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994).

28.     In applying the "fair and equitable" test, courts generally consider the following factors:    (1) the probability of success in the litigation; (2) the

difficulties, if any, to be encountered in the manner of collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors and a proper deference to their reasonable views. *See* TMT Trailer Ferry, 390 U.S. at 424-25; In re Lee Way Holding Corp., 120 B.R. 881, 890 (Bankr. S.D. Ohio 1990). Further, it is not necessary to satisfy each of the factors in evaluating a settlement provided that the factors as a whole favor approving settlement. In re Pacific Gas & Elec. Co., 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004).

29. The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court. Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994). In determining whether to approve the proposed settlement, however, the Court should not substitute its judgment for that of the debtor-in-possession. *See, e.g.,* Matter of Carla Leather, Inc., 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984). Instead, the Court need only "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983); *accord* In re Dow Corning Corp., 198 B.R. at 222; Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.), 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

30. While a court must "evaluate ... all ... factors relevant to a fair and full assessment of the wisdom of the proposed compromise," TMT Trailer Ferry, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, In re W.T. Grant Co., 699 F.2d at 608, or conduct a full independent investigation. In re Drexel Burnham Lambert Group, Inc., 134 B.R. at 496.

31. Finally, settlements are generally considered to be a sale of property of the estate. *See* Northview Motors, Inc. v. Chrysler Motors Corp., 186 F.3d 346, 350-51 (3d Cir. 1999). Thus, if the settlement is outside the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b), which shall be granted if it is based upon the sound business judgment of the debtor. *See* United Retired Pilots Benefits Protection Assn. v. United Airlines, Inc. (In re UAL Corp.), 443 F.3d 565, 572 (7th Cir. 2006); In re Chateaugay Corp., 973 F.2d 141 (2d Cir. 1992).

32. Under the foregoing standards, the Trustee's decision to enter into the Settlement represents a reasonable exercise of his business judgment. The Trustee submits that the Settlement is fair and equitable and in the best interests of the Bankruptcy Estate, and that this Court should approve the Settlement in its entirety because:

i. Without the Settlement, the Adversary Proceeding will require substantial additional discovery, including several depositions, significant motion practice, and both an evidentiary hearing on spoliation and a jury trial in the United States District Court, which will constitute a very significant cost to the Bankruptcy Estate;

ii. Without the Settlement, the Trustee estimates that he will be unable to complete the administration of the Bankruptcy Estate for at least one and perhaps as many as three years;

iii. Without the Settlement, there is a substantial risk that the Bankruptcy Estate will not recover an amount from the Adversary Proceeding sufficient to pay the professional fees resulting from the Adversary Proceeding and that the Bankruptcy Estate will become administratively insolvent as a result; and

iv. The Settlement provides for a cash payment to the Bankruptcy Estate and the transfer of the Subject Jewelry to the Bankruptcy Estate, which the Trustee believes (once the Subject Jewelry is sold) will be sufficient to pay professional fees and, in addition, make a distribution to creditors.

33. Similarly, the Trustee's decision to enter into the Noble Agreement also represents a reasonable exercise of his business judgment. The Noble Agreement is fair and equitable and in the best interests of the Bankruptcy Estate, and that this Court should approve the Noble Agreement because:

i. Without the Noble Agreement it will be the Trustee's responsibility to sell the Oval Diamond Ring, which would take time and cause the Trustee to incur additional costs to market and sell the Oval Diamond Ring, which will deplete the assets of the Bankruptcy Estate;

ii. Under the Noble Agreement, Noble takes the risk of marketing and selling the Oval Diamond Ring. Noble, who is in the jewelry industry and regularly sells items like the Oval Diamond Ring, is in a much better position to sell the Oval Diamond Ring than the Trustee; and

iii. Without the Noble Agreement, Noble has indicated that it will object to the Settlement. This would require the Trustee to litigate the objection, incurring additional cost and risk to the Bankruptcy Estate.

iv. Without the Noble Agreement, Noble has indicated that it will not sign the proposed settlement agreement. As a result, failing to enter into the Noble Agreement will deprive Zeidman's of a release they requested as part of the Settlement, which might cause Zeidman's to decline to enter into the Settlement.

## NOTICE

34. Pursuant to Fed. R. Bankr. P. 2002(a) and 9019(a), notice of this Motion has been given to the Office of the United States Trustee; all creditors; and all parties listed in the accompanying proof of service; through either: (1) the Court's electronic filing system or (2) U.S. mail. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## NO PRIOR REQUEST

35. No prior motion for the relief requested herein has been made to this or any other Court.

**WHEREFORE**, the Trustee respectfully requests the entry of an order, substantially in the form attached hereto as **Exhibit A**, approving the Settlement

and the Noble Agreement, authorizing the Trustee to enter into the Settlement and the Noble Agreement, and granting such other further relief as is just and proper.

Respectfully submitted:

SCHAFER AND WEINER, PLLC

By:   /s/ Joseph K. Grekin
JOSEPH K. GREKIN (P52165)
KIM K. HILLARY (P67534)
Counsel for the Trustee
40950 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304
(248) 540-3340
jgrekin@schaferandweiner.com

Dated:  April 12, 2023

# EXHIBIT   A

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DISTRICT

In Re:

JOSEPH DuMOUCHELLE FINE
& ESTATE JEWELLERS, L.L.C.

        Debtor,

Case No. 19-56239
Chapter 7
Hon. Lisa S. Gretchko

_____/

**ORDER GRANTING TRUSTEE'S MOTION FOR AN ORDER
PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE
AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 9019 AND 2002
APPROVING SETTLEMENT WITH ZEIDMAN'S JEWELRY AND
LOAN OF MICHIGAN, LLC, ZEIDMAN'S JEWELRY & LOAN OF
SOUTHFIELD, INC., AND ZEIDMAN'S LOAN OFFICE, INC., AND,
IN ADDITION, APPROVING A SETTLEMENT WITH
WILLIAM NOBLE RARE JEWELS, LP, WILLIAM NOBLE AND
ITS AFFILIATES REGARDING THE DISTRIBUTION OF
PROCEEDS UNDER THE AGREEMENT FOR ASSIGNMENT OF
RIGHTS AND PROCEEDS SHARING DATED SEPTEMBER 2, 2020**

Upon the Trustee's motion (the "Motion")[1] for an Order Pursuant to Sections

105 and 363 of the Bankruptcy Code and Fed. R. Bankr. P. 9019 and 2002

Approving Settlement with Zeidman's Jewelry and Loan of Michigan, LLC,

Zeidman's Jewelry & Loan of Southfield, Inc., and Zeidman's Loan Office, Inc.; it

appearing that the relief requested is in the best interest of Bankruptcy Estate, its

creditors, and other parties-in-interest; it appearing that the Court has jurisdiction

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings
set forth in the Motion.

{00999555.1}

over this matter pursuant to 28 U.S.C. §§ 157 and 1334; it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); it appearing that venue of this proceeding and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; notice of this Motion and the opportunity for a hearing on this Motion was appropriate under the particular circumstances and that no other or further notice need by given; and after due deliberation and sufficient cause appearing therefore, it is hereby **ORDERED**:

1.      The Motion is **GRANTED** in its entirety.

2.      The Settlement is approved in its entirety.

3.      The terms of the Settlement are incorporated into this Order and this Court shall have the jurisdiction to enforce the terms of the Settlement as if they were fully set forth in this Order.

4.      The Trustee is authorized and directed to enter into the Settlement.

5.      The Noble Agreement, as set forth in paragraph 23 of the Motion, is approved in its entirety. Pursuant to the Noble Agreement, instead of the payout to which Noble is entitled under the Assignment Agreement, Noble will receive from the Trustee the Oval Diamond Ring and a one-time payment of $5,000. The Trustee will be entitled to all other proceeds from the Settlement. Noble will sign the Settlement.

6.     The terms of the Noble Agreement are incorporated into this Order and this Court shall have the jurisdiction to enforce the terms of the Noble Agreement as if they were fully set forth in this Order.

7.     To the extent necessary, the Assignment Agreement (as defined in the Motion) is amended to reflect the terms of the Noble Agreement.

8.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

# EXHIBIT   B

# SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement") is entered into by and between Mark H. Shapiro (the "Trustee"), in his capacity as Chapter 7 Trustee of the bankruptcy estate of Joseph DuMouchelle Fine & Estate Jewellers, L.L.C. (the "Debtor") and as Assignee under that certain *Agreement for Assignment of Rights and Proceeds Sharing* dated September 2, 2020 (the "Assignment Agreement"), and Zeidman's Jewelry and Loan of Michigan, Inc., Zeidman's Jewelry & Loan of Southfield, Inc., and Zeidman's Loan Office, Inc. (collectively, "Zeidman's"). The Trustee and Zeidman's will be referred to collectively as the "Parties" and each may be referred to as a "Party" to this Agreement.

## RECITALS

A.      On November 17, 2019 (the "Petition Date"), creditors of the Debtor filed an Involuntary Petition for Relief against the Debtor under Chapter 7 of the Bankruptcy Code, in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"). The case has been assigned Case No. 19-56239-lsg (the "Bankruptcy Case").

B.      The Trustee is the duly appointed trustee of the Debtor's bankruptcy estate (the "Bankruptcy Estate").

C.      The Trustee entered into the Assignment Agreement with William Noble Rare Jewels, LP, William Noble and its affiliates (collectively, "Noble") following entry of the *Order Granting Stipulation for Entry of Order Authorizing Compromise With Noble.* [ECF No. 198]. Under the Assignment Agreement, Noble assigned to the Trustee the following claims and causes of action (collectively, "Noble Claims"): "all of [Noble's] right, title, and interest in and to any and all rights, claims, and causes of action they have, or may have, against Zeidman's and any other party who had contact with Zeidman's relating to the jewelry identified on the UCC Financing Statement filed by Noble against Debtor in the state of Michigan on 12-27-2019 as amended on 1-9-2019, and UCC Financing Statements filed by Noble against the Debtor in Florida, New York, Texas and North Dakota . . . and any proceeds related thereto[.]" Accordingly, pursuant to the Assignment Agreement, the Trustee is the assignee of the Noble Claims and the sole party vested with the right to assert claims and causes of action related to the Noble Jewelry (defined below).

D.      On December 28, 2020, the Trustee filed a Complaint in the Bankruptcy Court, initiating Adversary Proceeding 21-04023 (the "Adversary Proceeding"). The Trustee asserted claims and causes of action against Zeidman's in the Adversary Proceeding, which claims and causes of action include Noble Claims and other claims and causes of action belonging to the Trustee. The Noble Claims, together with all of the claims and causes of action asserted in the Adversary Proceeding, shall be referred to collectively as the "Claims."

E.      All of the Claims relate to the following pieces of jewelry that Noble consigned to the Debtor under a bailment arrangement in which Noble retained title and the ability to pass title (collectively, the "Noble Jewelry"): (i)  a 12.02 carat oval diamond ring which was the subject of GIA Report and assigned GIA #5171235309 dated November 29, 2022 (the "Oval Diamond Ring"); (ii) a 70.00 ctw Harry Winston Graduated Diamond Riviera Necklace ("Graduated

Diamond Necklace"); (iii) a 7.00 ct Radiant Diamond ("Radiant Diamond Ring"); (iv) 7.46 ct/8.10 ct Cushion Cut Diamond Studs ("Diamond Studs"); and (v) a 88.93 ctw Diamond Pear Necklace ("Diamond Pear Necklace").

F.    Pursuant to an Order of the Bankruptcy Court entered in the Adversary Proceeding on February 28, 2022 [ECF No. 119], the following items of Noble Jewelry are currently held in a safety deposit box under the joint control of the Trustee and Zeidman's (the "Lockbox") pending the outcome of this Adversary Proceeding: (i) the Oval Diamond Ring; and (ii) ten diamonds that were once a part of the Diamond Pear Necklace, also subject to GIA Reports and assigned GIA numbers 6204536370, 6204536407, 5202536361, 5202430398, 5201536363, 2201536731, 6207524695, 6204616668, 2205616674, and 1206524645 (collectively, the "Loose Stones" and together with the Oval Diamond Ring, the "Subject Jewelry").

G.    Zeidman's has denied liability for all of the Claims and asserted defenses to them including, among others, that Zeidman's is the rightful legal owner of the Noble Jewelry and is entitled to dispose of the Noble Jewelry as it sees fit.

H.    The Parties now wish to resolve the Claims and the Adversary Proceeding in accordance with the terms set forth below.

### AGREEMENT

**NOW, THEREFORE,** in consideration of the mutual conditions and covenants contained in this Agreement and for good and valuable consideration, the sufficiency and adequacy of which is hereby acknowledged, the Parties agree as follows:

1.    Recitals.    The foregoing Recitals are confirmed as true and correct and are incorporated herein by reference.

2.    Approval of Bankruptcy Court.    This Agreement is subject to approval of the Bankruptcy Court pursuant to Fed. R. Bankr. P. 9019. The Trustee shall promptly seek approval of this Agreement upon execution of this Agreement by the Trustee, Zeidman's, and Noble (the "9019 Motion"). The remaining obligations under this Agreement are not binding, and have no force or effect, unless and until the Bankruptcy Court grants the 9019 Motion.

3.    Payment. Zeidman's shall pay the Trustee $330,000 (the "Payment") within ten days of the date the Bankruptcy Court enters an Order that grants the 9019 Motion (the "Approval Date") by wiring the Payment to ███████████████████████████████████████ ██████████████████

4.    Transfer and Assignment of the Subject Jewelry.    Zeidman's shall transfer possession of the Subject Jewelry to the Trustee by permitting the Trustee to remove and take possession of the Subject Jewelry from the Lockbox (and assisting with the process to the extent necessary to transfer possession and/or at the reasonable request of the Trustee) within ten days of the Approval Date. On or before the date on which Zeidman's transfers the Jewelry to the Trustee, Zeidman's shall execute and deliver to the Trustee the Assignment attached to this Agreement as Exhibit A (the

"Assignment"), the terms of which the Parties agree are fully incorporated into this Agreement. The Parties agree that the intent of the Assignment is to transfer all of Zeidman's rights of any kind or character in the Subject Jewelry to the Trustee, and that when executed and delivered to the Trustee, the Assignment shall effectuate a transfer of those rights.

5.  Dismissal of Adversary Proceeding. Within ten days of completion of the following events: (1) Zeidman's making the Payment pursuant to the terms of Paragraph 3 of this Agreement, (2) Zeidman's transferring possession of the Subject Jewelry to the Trustee pursuant to the terms of Paragraph 4 of this Agreement, and (3) Zeidman's executing and delivering the Assignment pursuant to the terms of Paragraph 4 of this Agreement, the Parties shall file with the Bankruptcy Court the Stipulation for Dismissal of the Adversary Proceeding attached hereto as Exhibit B.

6.  Release by Trustee. Effective as of the date and time the Bankruptcy Court dismisses the Adversary Proceeding pursuant to the submission of the Stipulation for Dismissal in accordance with Paragraph 5 of this Agreement, the Trustee, on behalf of the Trustee, Debtor, the Bankruptcy Estate, the Trustee's successors, agents, and legal representatives, and in the Trustee's capacity as Assignee under the Assignment Agreement, hereby releases and forever discharges Zeidman's, and each of Zeidman's respective current and former professionals, legal representatives, officers, shareholders, attorneys, insurers, employees, agents, subsidiaries, and related entities, from any and all known or unknown claims, demands, damages, and causes of action of any sort including, but not limited to, the Claims, the Noble Claims, and all claims relating to the Noble Jewelry. The foregoing release shall not include claims against Joseph DuMouchelle or Melinda Adducci, who are debtors in Chapter 7 Case No. 19-54531 MIEB.

7.  Release by Zeidman's. Effective as of the date and time the Bankruptcy Court dismisses the Adversary Proceeding pursuant to the submission of the Stipulation for Dismissal in accordance with Paragraph 5 of this Agreement, Zeidman's, on its behalf and on behalf of its successors, agents, and legal representatives, hereby releases and forever discharges the Trustee, the Debtor, the Bankruptcy Estate, and each of their respective current and former professionals, legal representatives, officers, attorneys, insurers, employees, agents, subsidiaries, parents, and related entities from any and all known or unknown claims, demands, and causes of action of any sort including, but not limited to, the Claims, the Noble Claims, and all claims relating to the Noble Jewelry. The foregoing release shall not include claims against Joseph DuMouchelle or Melinda Adducci, who are debtors in Chapter 7 Case No. 19-54531 MIEB, but shall include any claims that could be asserted by Zeidman's in Chapter 7 Case No. 19-56239 MIEB, including but not limited to any claims that could be asserted under 11 U.S.C. § 502(h), 11 U.S.C. § 503(b), and/or 11 U.S.C. 502(f).

8.  Release and agreement by Noble. Noble agrees that the Recitals to this Agreement are true and correct. Effective as of the date and time the Bankruptcy Court dismisses the Adversary Proceeding pursuant to the submission of the Stipulation for Dismissal in accordance with Paragraph 5 of this Agreement, Noble and each of its affiliates, successors, assigns, and related entities hereby release and forever discharge Zeidman's, and each of Zeidman's respective current and former professionals, legal representatives, officers, shareholders, attorneys, insurers, employees, agents, subsidiaries, parents, and related entities, from any and all known or unknown claims, demands,

damages, and causes of action of any sort including, but not limited to, the Claims, the Noble Claims, and all claims relating to the Noble Jewelry.

9.  Release of Noble by Zeidman's. Effective as of the date and time the Bankruptcy Court dismisses the Adversary Proceeding pursuant to the submission of the Stipulation for Dismissal in accordance with Paragraph 5 of this Agreement, Zeidman's and each of its affiliates, successors, assigns, and related entities hereby release and forever discharge Noble, and each of Noble's respective current and former professionals, legal representatives, officers, shareholders, attorneys, insurers, employees, agents, subsidiaries, parents, and related entities, from any and all known or unknown claims, demands, damages, and causes of action of any sort including, but not limited to, the Claims, the Noble Claims, and all claims relating to the Noble Jewelry. The foregoing release shall not cover claims made against Zeidman's by third parties that would result in Zeidman's having claims against Noble for contribution and/or indemnity.

10. Trustee and Noble Release Regarding Zeidman's Purchasers. Effective as of the date and time the Bankruptcy Court dismisses the Adversary Proceeding pursuant to the submission of the Stipulation for Dismissal in accordance with Paragraph 5 of this Agreement, the Trustee, on behalf of the Trustee, Debtor, the Bankruptcy Estate, the Trustee's successors, agents, legal representatives, and in the Trustee's capacity as Assignee under the Assignment Agreement, and Noble hereby release and forever discharge any person who purchased and/or obtained possession of the Noble Jewelry (excluding the Subject Jewelry) from Zeidman's from any and all of the Noble Claims and any claims relating to the Noble Jewelry.

11. Settlement Not an Admission. This Agreement, and any negotiations or proceedings connected with it, shall not in any event constitute or be construed as, or be deemed to be evidence of, an admission of or concession of any wrongdoing by the Trustee, the Bankruptcy Estate, or Zeidman's.

12. No Transfers of Rights. The Trustee and Zeidman's represent and warrant that they have not sold, transferred, conveyed, assigned, or otherwise disposed of any right, title, or interest in any of the matters released herein to any person or entity.

13. Acknowledgments. Each Party to this Agreement acknowledges and represents that: (a) each has read the Agreement; (b) each clearly understands the Agreement and each of its terms; (c) each fully and unconditionally consents to the terms of this Agreement; (d) each has had the benefit and advice of counsel of its own selection with respect to its review and approval of this Agreement; (e) each has executed this Agreement freely, with knowledge, and without influence or duress; (f) each is not relying for its execution of this Agreement on any other representations, either written or oral, express or implied, made by any person; and (g) the consideration received by them has been actual and adequate.

14. Entire Agreement. This Agreement constitutes the entire agreement of the Parties with respect to its subject matter and may not be modified or amended except in a writing signed by all of the Parties.

15. <u>Validity of Agreement</u>. Should any clause, sentence, paragraph, or other part of this Agreement be finally adjudged by any court of competent jurisdiction to be unconstitutional, invalid or in any way unenforceable, such adjudication shall not affect, impair, invalidate, or nullify the remainder of the Agreement, but shall affect only the clause, sentence, paragraph, or other parts so adjudged.

16. <u>Signing in Counterparts</u>. This Agreement may be signed in Counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement. Signatures in pdf, electronic, or similar format shall be deemed to have the same force as a handwritten hard-copy signature.

17. <u>Construction</u>. In construing this Agreement, the Parties agree that no term or provision, or any uncertainty or ambiguity as to any term or provision, of this Agreement will be construed against a Party solely because the Party drafted the term or provision, or as a result of the manner of the preparation of the Agreement.

18. <u>Successors and Assigns</u>. The Parties agree that the terms of this Agreement shall be binding on each of their respective successors, and assigns.

19. <u>Choice of Law</u>. This Agreement shall be deemed to be made under and shall be interpreted in accordance with the laws of Michigan. The Bankruptcy Court shall retain jurisdiction regarding enforcement of this Agreement. Any dispute arising out of or related to this Agreement must be brought in the Bankruptcy Court, and the Bankruptcy Court will have jurisdiction to rule on any such dispute.

20. <u>Notice</u>. Any notice required by this Agreement must be in writing. Notices to the Trustee shall be made via e-mail to Joseph Grekin at jgrekin@schaferandweiner.com, with a copy to Mark Shapiro at shapiro@steinbergshapiro.com. Notice to Zeidman's shall be made via e-mail to Anthony Kochis at akochis@wolfsonbolton.com.

**IN WITNESS WHEREOF,** the Parties hereto evidence their agreement and have executed this Agreement as of this _____ day of April, 2023.

**[SIGNATURES CONTAINED ON THE FOLLOWING PAGE]**

**MARK H. SHAPIRO, TRUSTEE**

_(signature)_ , TRUSTEE

Mark H. Shapiro, Trustee

Dated: APRIL 10, 2023

**William Noble Rare Jewels, LP,**
**as to paragraphs 8, 9, and 10 only**

By: _____

Its: _____

Dated:

_____
**William Noble, as to paragraphs 8, 9,**
**and 10 only**

**ZEIDMAN'S JEWELRY AND LOAN OF**
**MICHIGAN, INC.**

By: _____

Its: _____

Dated:

**ZEIDMAN'S JEWELRY & LOAN OF**
**SOUTHFIELD, INC.**

By: _____

Its: _____

Dated:

**ZEIDMAN'S LOAN OFFICE, INC.**

By: _____

Its: _____

Dated:

**MARK H. SHAPIRO, TRUSTEE**

_____
Mark H. Shapiro, Trustee

Dated:

**William Noble Rare Jewels, LP,
as to paragraphs 8, 9, and 10 only**

By: William Noble, Jr

Its: Managing Partner

Dated: 1/10/23

_____
**William Noble, as to paragraphs 8, 9,
and 10 only**

**ZEIDMAN'S JEWELRY AND LOAN OF
MICHIGAN, INC.**

By: _____

Its: _____

Dated:

**ZEIDMAN'S JEWELRY & LOAN OF
SOUTHFIELD, INC.**

By: _____

Its: _____

Dated:

**ZEIDMAN'S LOAN OFFICE, INC.**

By: _____

Its: _____

Dated:

**EXHIBIT A**

**MARK H. SHAPIRO, TRUSTEE**

_____
Mark H. Shapiro, Trustee

Dated:


**William Noble Rare Jewels, LP,**
**as to paragraphs 8, 9, and 10 only**

By: _____

Its: _____

Dated:


_____
**William Noble, as to paragraphs 8, 9,**
**and 10 only**


**ZEIDMAN'S JEWELRY AND LOAN OF**
**MICHIGAN, INC.**

By: _____

Its: _____Pres_____

Dated: 4/7/23


**ZEIDMAN'S JEWELRY & LOAN OF**
**SOUTHFIELD, INC.**

By: _____

Its: _____Pres_____

Dated: 4/7/23


**ZEIDMAN'S LOAN OFFICE, INC.**

By: _____

Its: _____Pres_____

Dated: 4/7/23

**EXHIBIT A**

# ASSIGNMENT

FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, ZEIDMAN'S JEWELRY AND LOAN OF MICHIGAN, INC., ZEIDMAN'S JEWELRY & LOAN OF SOUTHFIELD, INC., AND ZEIDMAN'S LOAN OFFICE, INC. (collectively, "Assignors"), hereby assign, transfer, and deliver to MARK H. SHAPIRO, in his capacity as Chapter 7 Trustee for the Bankruptcy Estate of Joseph DuMouchelle Fine & Estate Jewellers, L.L.C. ("Assignee"), all of the Assignors' rights, title, and interest in and to the following assets (collectively, the "Jewelry"):

1.  A 12.02 carat oval diamond ring which was the subject of GIA Report #5171235309 dated November 29, 2022, defined in that certain settlement agreement the Assignors and Assignee have entered into contemporaneously herewith (the "Settlement Agreement") as the Oval Diamond Ring; and

2.  Ten diamonds that were once a part of a piece of jewelry referred to as the Diamond Pear Necklace, defined in the Settlement Agreement as the Loose Stones.

The Assignors represent and warrant that that they have not sold the Jewelry or transferred any ownership rights in the Jewelry of any kind or character to any person or entity which is not a party to this Assignment. This Assignment is being executed and delivered in connection with and pursuant to the terms of the Settlement Agreement. Assignors and Assignee agree that any disputes related to this Assignment shall be decided as if this Assignment was fully incorporated into the Settlement Agreement and subject to its terms.

*(Signatures on next Page)*

**ASSIGNOR:**

**ZEIDMAN'S JEWELRY AND LOAN OF MICHIGAN, INC.**

Date Executed: _____

By: _____

Its: _____


**ZEIDMAN'S JEWELRY & LOAN OF SOUTHFIELD, INC.**

Date Executed: _____

By: _____

Its: _____


**ZEIDMAN'S LOAN OFFICE, INC.**

Date Executed: _____

By: _____

Its: _____


**ACCEPTED:**


**ASSIGNEE:**

**MARK H. SHAPIRO, TRUSTEE**

Date Executed: _____

_____
Mark H. Shapiro, Trustee

**ASSIGNOR:**

**ZEIDMAN'S JEWELRY AND LOAN OF MICHIGAN, INC.**

Date Executed: _____

By: _____

Its: _____


**ZEIDMAN'S JEWELRY & LOAN OF SOUTHFIELD, INC.**

Date Executed: _____

By: _____

Its: _____


**ZEIDMAN'S LOAN OFFICE, INC.**

Date Executed: _____

By: _____

Its: _____

**ACCEPTED:**

**ASSIGNEE:**

**MARK H. SHAPIRO, TRUSTEE**

Date Executed: _____

_____
Mark H. Shapiro, Trustee

**EXHIBIT B**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DISTRICT

In Re:

JOSEPH DuMOUCHELLE FINE
& ESTATE JEWELLERS, L.L.C.

       Debtor

Case No. 19-56239
Chapter 7
      Hon. Lisa S. Gretchko

_____/

MARK H. SHAPIRO, CHAPTER 7 TRUSTEE,
AND ASSIGNEE OF THE RIGHTS OF
WILLIAM NOBLE RARE JEWELS, LP

       Plaintiff,

Adversary Proceeding
No. 21-04023

v.

ZEIDMAN'S JEWELRY AND LOAN
OF MICHIGAN, INC., ZEIDMAN'S
JEWELRY & LOAN OF SOUTHFIELD,
INC., AND ZEIDMAN'S LOAN OFFICE, INC.,

       Defendants.

_____/

## STIPULATION FOR ENTRY OF ORDER
## DISMISSING ADVERSARY PROCEEDING

Plaintiff Mark H. Shapiro and Defendants Zeidman's Jewelry and Loan of Michigan,

Zeidman's Jewelry & Loan of Southfield, Inc., and Zeidman's Loan Office, Inc., by and through

their counsel, hereby stipulate to the entry of the attached Order dismissing this adversary

proceeding with prejudice and without costs.

CONSENTED TO AND APPROVED:

**SCHAFER AND WEINER, PLLC**

By:_____
JOSEPH K. GREKIN (P52165)
KIM K. HILLARY (P67534)
Attorneys for Plaintiff
40950 Woodward Ave., Ste. 100 Bloomfield
Hills, MI  48304
(248) 540-3340
khillary@schaferandweiner.com

**WOLFSON BOLTON PLLC**

By:_____
SCOTT A. WOLFSON (P53194)
ANTHONY J. KOCHIS (P72020)
Attorneys for Defendants
3150 Livernois, Suite 275
Troy, MI  48083
(248) 247-7105
akochis@wolfsonbolton.com

Dated: January ___, 2023

In Re:

JOSEPH DuMOUCHELLE FINE      Case No. 19-56239
& ESTATE JEWELLERS, L.L.C.      Chapter 7
                                               Hon. Lisa S. Gretchko

         Debtor

_____/

MARK H. SHAPIRO, CHAPTER 7 TRUSTEE,
AND ASSIGNEE OF THE RIGHTS OF
WILLIAM NOBLE RARE JEWELS, LP

         Plaintiff,

                                          Adversary Proceeding
                                          No. 21-04023

v.

ZEIDMAN'S JEWELRY AND LOAN
OF MICHIGAN, INC., ZEIDMAN'S
JEWELRY & LOAN OF SOUTHFIELD,
INC., AND ZEIDMAN'S LOAN OFFICE, INC.,

         Defendants.

_____/

## **ORDER DISMISSING ADVERSARY PROCEEDING**

This matter having come before the Court upon a Stipulation filed by the Parties, the Court, having considered the stipulation, finds just cause to grant the requested relief, and is otherwise fully advised. **NOW, THEREFORE**:

**IT IS HEREBY ORDERED** that this Adversary Proceeding, Case No. 21-04023, is dismissed with prejudice and without costs assessed to either party.